**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | MASTER FILE NO. 12-MD-02311 |

_____

| | |
|---|---|
| In re: Fuel Injection Systems | HON. MARIANNE O. BATTANI |

_____

THIS DOCUMENT RELATES TO:

| | |
|---|---|
| Automobile Dealer Plaintiffs | 2:13-cv-02202 |
| End-Payors Plaintiffs | 2:13-cv-02203 |

_____/

**REDACTED OPINION AND ORDER DENYING DEFENDANT**
**KEIHIN NORTH AMERICA'S MOTION TO DISMISS**

Before the Court is Defendant Keihin North America's ("KNA") Motion to Dismiss the End-Payors' Corrected Consolidated Amended Class Action Complaint and the Automobile Dealerships' Consolidated Amended Class Action Complaint  (Doc. Nos. 63 (sealed) and 62 in 13-2202; Doc. Nos. 57 and 58 (sealed) in 13-2203).  The Court heard oral argument on May 6, 2015, and at the conclusion of the hearing, took this matter under advisement.  For the reasons that follow, Defendant's motion is **DENIED**.

**I.  INTRODUCTION AND FACTUAL ALLEGATIONS**

Automobile Dealer Plaintiffs ("ADPs") and End Payor Plaintiffs ("EPPs") (collectively "Indirect Purchaser Plaintiffs" or "IPPs" ) bring class actions against Defendants under federal and state law based on Defendants' alleged conspiracy to rig bids and fix the prices, and allocate the market and customers of Fuel Injection Systems

manufactured or sold in the United States.  ((Doc. Nos. 32 (sealed) and 33 in 13-2202, hereinafter "ADPs' Complaint" at ¶ 1, 137; Doc. Nos. 27 and 28 (sealed) in 13-2203 hereinafter, "EPPs' Complaint" at ¶ 1).  Defendants are manufacturers or sellers of Fuel Injection Systems that are manufactured or sold in the United States.        In their complaints, IPPs include allegations about government investigations into antitrust activity involving Fuel Injection Systems, (ADPs' Complaint at ¶ 5; EPPs' Complaint at ¶ 5), as well as the guilty pleas by Defendants and agents flowing from the antitrust investigation, (ADPs' Complaint at ¶¶ 6-13, 16, 17; EPPs' Complaint at ¶¶ 6-14), and guilty pleas involving Fuel Injection Systems (ADPs' Complaint at ¶¶14-15, 18, 187-217; EPPs' Complaint at ¶¶14-15, 18, 153-184).  IPPs also allege that market conditions conducive to an antitrust conspiracy exist.  (ADPs' Complaint at ¶ 162; EPPs' Complaint at ¶ 123).  Specifically, the Fuel Injection Systems market has (1) high barriers to entry which facilitate the formation and maintenance of a cartel.  (ADPs' Complaint at ¶ 162; EPPs' Complaint at ¶ 124).  Those barriers include "costly and lengthy start-up costs," including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, and long-standing customer relationships.  (ADPs' Complaint at ¶ 164; EPPs' Complaint at ¶ 125).  Defendants own patents.  (ADPs' Complaint at ¶ 165; EPPs' Complaint at ¶ 126).  IPPs allege inelasticity of demand.  (ADPs' Complaint at ¶¶ 167-169; EPPs' Complaint at ¶¶ 129-131).  Further IPPs allege that Defendants conspired to extract higher prices.  (ADPs' Complaint at ¶ 258; EPPs' Complaint at ¶ 222).

IPPs also allege that KNA met in secret with other Defendants to discus pricing and customer allocation, and that all Defendants enforced the conspiracy. (ADPs' Complaint at ¶¶ 173-184, 219-232; EPPs' Complaint at ¶¶ 141, 185-201, 218-232). IPPs provide illustrative examples of KNA and its co-defendants' activity in the sealed complaints. (ADPs' Complaint at ¶¶ 219-232; EPPs' Complaint at ¶¶ 185-201)**.**

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice.").

## III.  ANALYSIS

The parties dispute whether the allegations advanced by IPPs in support of the

KNA's involvement in the conspiracy differ in substance from the allegations in other

component part cases, which have been found sufficient by this Court.  KNA offers

three grounds for distinguishing the outcome in this motion:  its relationship with Honda

Motors; the conclusion of the Department of Justice investigation of KNA; and the

absence of allegations creating an inference of unlawful conduct.  The Court discusses

the distinctions below.

### A.  Relationship with Honda

KNA contends that it is different from every other defendant that has sought

dismissal because Honda Motors ("Honda") owns a controlling stake in KNA.  Honda

has a 56% ownership stake in KNA.  (See Doc. No. 47 in 13-02200, Corporate

Disclosure Statement).  The ownership interest means KNA and Honda are a single

actor incapable of conspiring as a matter of law.

Although IPPs urge the Court to reject KNA's assertion as involving facts outside

the pleadings and not properly before the Court on a Rule 12(b)(6) motion, the

procedural rules allow for limited consideration of extraneous materials.  Pursuant to

Fed. R. Civ. P. 12(d), "If, on a motion under Rule 12(b)(6). . .matters outside the

pleadings are presented to and not excluded by the court, the motion must be treated

as one for summary judgment under Rule 56."  Although the Corporate Disclosure

Statement is not included in the definition of pleadings, a court may consider "public

4

records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008).

Even if the Corporate Disclosure Statement does not fit within the list of typical exceptions identified by case law, the Court observes that the local rules require a Statement of Disclosure of Corporate Affiliations and Financial interest. See E. D. Mich. LR 83.4.  Moreover, the Court finds the interests of justice better served in addressing the merits of KNA's argument. See Fed. R. Civ. P. Rule 1.  Consequently, the Court assumes, for purposes of this argument, that Honda owns a controlling stake in KNA and considers whether Honda's ownership interest requires the Court to treat the two entities as a single actor.

The Court agrees with KNA that conduct by a single entity is not prohibited by the Sherman Act.  To succeed on a claim that the Sherman Act was violated, a plaintiff must show the challenged agreement was entered into by multiple parties.  15 U.S.C. § 1.  The Supreme Court recognized the distinction between concerted and independent action in Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 767 (1984), holding that a parent corporation and its wholly owned subsidiary "are incapable of conspiring with each other for purposes of § 1 of the Sherman Act."  The Copperweld Court observed:

> The coordinated activity of a parent and its wholly-owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act.  A parent and its wholly owned subsidiary have a complete unity of interest.  Their objectives are common, not disparate; their general

5

> corporate actions are guided or determined not by two
> separate corporate consciousnesses, but one.  They are not
> unlike a multiple team of horses drawing a vehicle under the
> control of a single driver.  With or without a formal
> "agreement," the subsidiary acts for the benefit of the parent,
> its sole shareholder.  If a parent and a wholly owned
> subsidiary do "agree" to a course of action, there is no
> sudden joining of economic resources that had previously
> served different interests, and there is no justification for § 1
> scrutiny."

467 U.S. at 771.

The inquiry does not stop with KNA's ownership assertion, which in no way rises to the wholly-owned subsidiary status at issue in Copperweld.  The inquiry turns on whether KNA is alleged to have entered into a conspiracy with "separate decisionmakers."  Id. at 769.  In this case, IPPs have not alleged that KNA conspired with Honda, and the Court finds no basis for concluding that KNA is incapable of conspiring with the co-defendants named in the complaints.  Different decision makers are alleged to be involved, including decision makers that previously pursued their own separate economic interests.  Am. Needle, Inc. v. Nat'l Football League, 560 U.S. 183, 194-95 (2010).  Therefore, the Copperweld decision does not preclude IPPs' claim against KNA.

The Court's assessment is not altered by the decision in Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1109 (7th Cir. 1984), a case that is factually inapposite. The plaintiffs in that case did not allege a price-fixing scheme, a tying arrangement, or a market allocation scheme.  The plaintiff alleged that the defendant, Ford Motor Company ("Ford")  "elected to replace [the plaintiff] its exclusive haulaway transporter for the Chicago area with another carrier on the grounds that the original carrier

6

continually sought higher prices that Ford was unwilling to pay." Id.  The court observed

that even though Ford entered into an agreement that eliminated its business with the

plaintiff, "the same could be said of any similar exclusive arrangement when the original

supplier of services is replaced by another." Id.  Therefore, the allegations failed to

state a per se antitrust violation.  Because it was implausible that Ford could dictate the

tariffs of suppliers of transportation service or that it would conspire to allow the new

carrier to charge noncompetitive prides, the court further found that the allegations were

not saved by a rule of reason analysis.

In contrast, here the allegations do not result in an inference that KNA's conduct

would injure itself.  The allegations before this Court involve an agreement that joins

"independent centers of decisionmaking."  Copperweld, 467 U.S. 769.  Accordingly, the

Court denies the motion on this ground.

### B.  Closed Investigation

Next, the parties dispute whether Indirect Purchaser Plaintiffs' allegations

sufficiently link KNA to a single, overarching, global conspiracy given that the

Department of Justice formally closed its investigation into KNA without taking action.

(See Doc. No. 62 in 13-2202, Ex. A, June 16, 2014 letter).  In addition, KNA asserts that

the limited nature of the investigation involving a single co-conspirator and a single

customer further extinguish any inference that might suggest its involvement in a

massive, global conspiracy.

IPPs are not limited to proceeding against defendants that have pleaded guilty to

the conspiracy.  Despite the lack of charges against KNA, a myriad of reasons exist to

explain why a government decides not to proceed with charges against a target of an

7

investigation.  The mere fact that the DOJ did not charge KNA is not dispositive.  See In re High Fructose Corn Syrup Antitrust Litig., 295 F.3d 651, 664 (7th Cir. 2002) (discussing the distinction between civil and criminal litigation).  The DOJ has limited resources to prosecute and the evidence required to succeed in a civil suit is a preponderance rather than guilt beyond a reasonable doubt.  Although the investigation of KNA was terminated without charges, other Defendants have pleaded guilty and the affected sales go beyond the single Original Equipment Manufacturer identified in the allegations specific to KNA.  Consequently, the Court rejects KNA's characterization of its involvement in this litigation as guilt by association.

The complaints, read as a whole, in the light most favorable to IPPs are sufficient to create an inference that KNA knew of the essential nature of the conspiracy.  Five Defendants have pleaded guilty.  IPPs allege that KNA sold Fuel Injection Systems to a major Original Equipment Manufacturer.  IPPs advance other allegations to support an inference of KNA's involvement in the Fuel Injection Systems conspiracy.  The Court observes that IPPs are not required by Rule 12(b)(6) to articulate the boundaries of the Fuel Injection Systems conspiracy with an indelible marker.  See In re Lithium Ion Batteries Antitrust Litigation No. 13-MD-2420 YGR, 2014 WL 309192, at *2 (N.D.Cal. Jan. 21, 2014) (noting that the question was not "whether any conspiracy existed, only how far it reached," a question fact).

As noted by the Supreme Court in its Twombly decision, Rule 8(a) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." Twombly, 550 U.S. at 556.  Here there are guilty pleas by co-defendants,

8

market conditions conducive for antitrust conspiracy, and specific examples of KNA's involvement in the conspiracy.  These facts distinguish KNA's situation from the facts in Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd., 08–CV–42 JG VVP, 2011 WL 7053807, at *15 (E.D.N.Y. Jan. 4, 2011) report and recommendation adopted, 08–CV–00042 JG VVP, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012), which noted that "[a]n allegation that individual members of a corporate group 'joined the alleged conspiracies through their corporate affiliation' alone would be "precisely the sort of 'legal conclusion couched as a factual allegation' that Twombly and Iqbal deemed insufficient to state a claim."  Although a complaint " need not contain detailed 'defendant by defendant' allegations," it "must allege that each individual defendant joined the conspiracy and played some role in it. . . ."  In re TFT-LCD (Flat Panel) Antitrust Litig., 586 F. Supp. 2d 1109, 1117 (N. D. Cal. 2008) (internal quotation marks omitted).  IPPs' complaints meet this standard.  The fact that an antitrust conspiracy in the Fuel Injection Systems market existed when coupled with the type of market conditions that facilitate such conduct, the guilty pleas of co-defendants, and the examples given involving KNA's involvement in the conspiracy satisfy Twombly.

### C.  Joint Venture

Lastly, the parties dispute the sufficiency of the allegations against KNA based on its status as member of a joint venture.  According to KNA, the pleadings must be analyzed under the rule of reason because price-fixing by a joint venture is not per se unlawful.  See, Polk Brothers v. Forest City Enters., 776 F.2d 185 (7th Cir. 1985) (challenging whether agreements made when the joint venture was formed were valid); United States v. Addyston Pipe & Steel Co., 85 F. 271, 280 (6th Cir. 1898) (addressing

9

the lawfulness of an agreement to refrain from competition between two or more partners in a joint venture).

Although courts generally analyze antitrust allegations involving a joint venture under the rule of reason, the per se standard governs under certain circumstances. The court in Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 338 (2d Cir. 2008), identified two exceptions.  First, it acknowledged that the per se approach is appropriate where the "joint venture is essentially a sham, offering no reasonable prospect of any efficiency-enhancing benefit to society."  Id. (citing Addamax Corp. v. Open Software Found., Inc., 152 F.3d 48, 52 (1st Cir. 1998)).  Second, it found that the per se approach may be applied "where a particular challenged restraint is not reasonably necessary to achieve any of the efficiency-enhancing benefits of a joint venture and serves only as naked restraint against competition."  Major League Baseball Props., Inc., 542 F.3d at 338 (citing Polk Bros., Inc. v. Forest City Enters., Inc., 776 F.2d 185, 188-89 (7th Cir. 1985)).  The rule of reason is not applicable here because EPPs are not challenging the joint venture itself as anticompetitive.  Nor are they challenging price-fixing within the confines of the joint venture.  Compare Texaco Inc. v. Dagher, 547 U.S. 1, 7, 126 S. Ct. 1276, 1280, 164 L. Ed. 2d 1 (2006) (considering whether petitioners engaged in unlawful price fixing when joint venture set a single price for both Texaco and Shell Oil brand gasoline and finding the price unification policy should have been challenged under the rule of reason).  They challenge conduct that took place outside of the joint venture.

10

In Paragraph 194 of their complaint, EPPs allege:

In Paragraph 195, EPPs allege:

Consequently, even though KNA formed a joint venture, this Court must consider the allegations against them in the context of whether the agreement "deprives the marketplace of independent centers of decisionmaking." Am. Needle, 130 S.Ct. at 2212; Copperweld, 467 U.S. at 769. EPPs' allegations are that the parties involved actually operated to promote anticompetitive conduct.

11

KNA's reliance upon the decision in Polk Bros., 776 F.2d at 190 to establish no per se violation has been alleged is misplaced. There, the court assessed the joint venture parties' agreement to operate a store together while limiting sales of competitive products under the rule of reason because the parties "were cooperating to produce, not to curtail output; the cooperation increased the amount of retail space available and was at least potentially beneficial to consumers; [and] the restrictive covenant made the cooperation possible." Id. at 190.  There is no basis for reading the decision to cover the situation alleged

In addition, KNA argues that although EPPs allege particular facts regarding KNA's conduct, they failed to show they were injured as a result of the agreement. Case law supports the existence of "antitrust standing where plaintiffs purchased downstream goods from a cartel of manufacturers who made, and fixed the price of, a component of those goods."  In re TFT-LCD (Flat Panel) Antitrust Litig., 586 F. Supp. 2d at 1118 (citing  In re Linerboard Antitrust Litig., 305 F.3d 145, 159-60 (3d Cir. 2002) (in alleged conspiracy to fix prices of linerboard, plaintiffs who purchased corrugated sheets or boxes containing linerboard directly from defendants had standing)) .  Here, the Court has reviewed the specific allegations,

and is satisfied that, read in its entirety, EPPs' complaint alleges antitrust conduct as well as injury.

## IV.  CONCLUSION

For the reasons discussed above, the Court **DENIES** the motion.

12

2:13-cv-02202-MOB   Doc # 120   Filed 09/08/15   Pg 13 of 13   Pg ID 1910

**IT IS SO ORDERED**.

Date:   September 8, 2015                          s/Marianne O. Battani
                                                   MARIANNE O. BATTANI
                                                   United States District Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 8, 2015.


                                                   s/ Kay Doaks
                                                   Case Manager